IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JULIUS BRYSON, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| | : | |
| VS. | : | **1 : 12-CV-192 (WLS)** |
| | : | |
| GREGORY MCLAUGHLIN, Warden, | : | |
| | : | |
| | : | |
| Respondent. | : | |

## RECOMMENDATION

The Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. ▪ 2254

challenging his Turner County convictions for armed robbery and possession of a firearm during

the commission of a crime.  (Doc. 1).  Petitioner was sentenced to a total of forty-five (45) years

inprisonment.  Petitioner's convictions and sentences were affirmed on direct appeal, and

certiorari was denied by the Georgia Supreme Court on November 15, 2012.  *Bryson v. State*,

316 Ga. App. 512, 729 S.E.2d 631 (2012), *cert. denied* No. S12C1768 (Ga. Nov. 15, 2012).

Petitioner filed this federal habeas Petition on December 14, 2012.

### Factual Background

This Court is "bound under 28 U.S.C. ▪ 2254[(e)] to afford factual findings of state

[appellate] courts a presumption of correctness."  *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th

Cir. 1990); *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984).  The habeas petitioner Ashall

have the burden of rebutting the presumption of correctness by clear and convincing evidence.@

28 U.S.C. ▪ 2254(e)(1).  The Anti-Terrorism and Effective Death Penalty Act of 1996

(AAEDPA@ thus retains the statutory presumption of correctness that is to be afforded state

courts=factual findings. *Id.* Inasmuch as no dispute has been raised herein regarding the findings

of fact issued by the Georgia Court of Appeals, said findings are hereby adopted as follows:

> [T]he evidence showed that on the afternoon of April 12, 2003, a
> custodian was working at a rest area on Interstate 75 in Turner
> County when she observed a white car occupied by three black
> males back into a parking space at the rest area. One of the males
> was wearing a black bandana on his head; another wore a hood.
> The custodian testified that she was able to see the males' faces at
> that time.
>
> On that same afternoon, the first victim stopped at the rest area and
> went into the men's restroom.  Upon entering the restroom, the
> victim observed two black males standing at the sink.  While using
> the urinal, the victim was approached from behind by one of the
> males, who demanded his wallet.  The victim attempted to turn
> away, and was approached by the second male, who pulled out a
> gun and pointed it at the victim's chest.  The victim saw the gun
> and heard the distinctive "click" sound of a bullet being engaged
> into the gun's chamber.  The victim removed his wallet from his
> back pocket and handed it to the perpetrators.  Upon discovering
> that the victim did not have any money in his wallet, the
> perpetrators shoved the wallet into the victim's chest and searched
> the victim's pockets.
>
> While the armed robbery of the first victim was still in progress, a
> second victim entered the restroom.  The perpetrators then turned
> to commit an armed robbery of the second victim.  The second
> victim testified that the perpetrator approached him from behind,
> demanded his wallet, and said that the accomplice "has a gun and
> he'll kill you."  The second victim gave the perpetrators his wallet
> and cash in the amount of $610.
>
> The first victim rushed out of the restroom and told the custodian
> to call 911 to report the armed robbery incidents.  The second
> victim, his wife, and the custodian observed the perpetrators flee
> from the rest area in the white car that had been backed into a
> parking space at the rest area.  The second victim and his wife
> described that the white car had a cracked windshield.  Both victims
> described that one of the perpetrators was tall and was wearing a
> hood and a black bandana.  The second perpetrator who had
> brandished the gun was described as being shorter, young, and

wearing a white jersey.

Local law enforcement officers received a "[b]e on the lookout" radio report with the descriptions of the white car and the perpetrators.  Almost immediately after receiving the radio report, an officer observed the car, matching the descriptions and traveling at a high rate of speed on the interstate.  The officer tracked the car's speed and reported that the car was going 102 miles per hour in a 65 mile per hour zone.  The officer pursued the car, activating the blue lights and siren of his patrol car in efforts to initiate a stop.  The perpetrators did not stop the car, and instead led the officer on a high speed chase.  Several other officers joined the chase, and eventually stopped the car by blowing out its tires.  Bryson, who was the driver, then bailed from the car and led the officers on a foot chase.  Bryson was captured and taken into police custody.

Bryson's accomplices were also apprehended at the end of the chase.  After the perpetrators were apprehended, the officers searched the car and recovered the second victim's driver's license, along with the clothing and bandana that the perpetrators had worn during the commission of the crimes.  The officers also recovered the second victim's wallet from the side of the interstate.  In addition, the officers recovered from Bryson's accomplice over $600, matching the approximate amount taken from the second victim.

During the course of their investigation, the officers compiled a photographic lineup.  The custodian identified Bryson as being one of the perpetrators in the lineup.  The custodian also made an in-court identification of Bryson at trial.

*Bryson*, 316 Ga. App. at 512-14.

## Standard of Review

Pursuant to 28 U.S.C. ▪ 2254 (d)(1), a federal court may not grant habeas relief on the

basis of a claim adjudicated on the merits in state court unless that adjudication Aresulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States.@ In interpreting this

3

portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Court held that "[u]nder ' 2254(d)(1)=s >unreasonable application= clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411. An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner=s case." *Id.* at.  407.  "In addition, a state court decision involves an unreasonable application of Supreme Court precedent >if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.=" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 407).

Accordingly, the Petitioner must first establish that the state habeas court=s adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. ' 2254(d).  In other words, as this is a post-Anti-Terrorism and Effective Death Penalty Act ("AEDPA" case, the Petitioner herein may obtain federal habeas

relief *only* if the challenged state court decision was either contrary to or an unreasonable

application of Federal law as determined by the Supreme Court, or if the state court issued an

unreasonable determination of the facts. *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3,

7 (2002); 28 U.S.C. ▪ 2254(d).

The Petitioner raises seven (7) grounds for relief in this federal habeas petition.

*Sufficiency of the evidence*

In Ground 1, the Petitioner alleges that the evidence was constitutionally insufficient to

sustain his convictions.  Respondent submits that Petitioner raised this issue on direct appeal and

that it was decided adversely against him.

In considering this issue, the Georgia Court of Appeals found that:

> [v]iewing the evidence in the light most favorable to the jury's
> verdict, we conclude that the evidence was sufficient to establish
> Bryson's guilt as a party to the crimes.
>
> . . .
>
> Here, the trial evidence . . . showed that Bryson either directly
> committed or was a party to the armed robberies of both victims at
> the rest area.  The custodian who was present at the scene
> identified Bryson as one of the perpetrators who had participated in
> the crimes.  Bryson's flight from the rest area, flight from the
> officers, act of driving the getaway car, and possession of the
> second victim's driver's license and clothing items that witnesses
> linked to the crimes presented additional circumstances from which
> the jury could infer his guilt as a party to the crimes.
>
> . . .
>
>  . . . Based upon the totality of the circumstances and evidence, the
> jury was entitled to conclude that Bryson's accomplice possessed a
> gun during both armed robberies and that the second victim was in
> reasonable apprehension that there was a gun.
>
>  . . . Notwithstanding any evidentiary conflicts, this evidence was

sufficient to authorize the jury's guilty verdict.

*Bryson*, 316 Ga. App. at  514-17.

The Georgia Court of Appeals, although not expressly citing the opinion, relied on the

principles governing sufficiency of the evidence set forth in *Jackson v. Virginia,* 443 U.S. 307

(1979), and viewed the evidence in the light most favorable to the verdict.  The court concluded

that the evidence was sufficient to authorize the jury to find Petitioner guilty of armed robbery and

possession of a firearm during the commission of a felony.  A state court is not required to

expressly cite the governing Supreme Court standards, but Aneither the reasoning nor the result of

the state-court decision may contradict [governing Supreme Court standards].@*Early v.  Packer*,

537 U.S. 3, 8 (2002).

The Petitioner has not shown that the state court=s decision on this issue is not entitled to

deference under ▪ 2254(d).  The state court=s conclusions regarding the sufficiency of the

evidence reveal that its conclusions were neither contrary to nor an unreasonable application of

clearly established Federal law, and did not result in a decision based on an unreasonable

determination of the facts based on the evidence presented in the state court proceedings.  Thus,

this Court is prohibited from issuing habeas relief on the basis of the Petitioner=s challenge to the

sufficiency of the evidence.

### *Procedurally defaulted claim*

In Ground 2, the Petitioner raises a claim of ineffective assistance of counsel based on

counsel's failure to object to the trial court's level of certainty charge. The Respondent asserts that

this ineffective assistance ground is new and procedurally defaulted under Georgia law, as Petit ioner

did not timely raise this claim at trial or in his direct appeal as required by O.C.G.A. § 9 -14-48(d).

Under Georgia law,

> [t]he court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise com plied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause fo r noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted.

O.C.G.A. § 9-14-48(d).

A state prisoner may not obtain federal habeas relief on a claim that the state courts refused to consider or would refuse to consider due to his failure to timely raise the claim at trial and/or on appeal, unless the petitioner can establish cause for the failure and actual prejudice resulting therefrom, or a fundamental miscarriage of justice if the federal court does not  consider the claims.  *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Coleman v. Thompson*, 501 U.S. 722, 724 (1991).

Both cause and prejudice must be established in order to overcome the procedural bar, and the burden of demonstrating cause and prejudice lies with the Petitioner.  *McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the d efense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 480, 488 (1986).

Cause for a procedural default exists "where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'"  *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).  In general, mistakes made by a prisoner's postconviction attorney that amount to negligence do not qualify as "cause".  *Coleman*, 501 U.S. at 753.  "The 'cause' excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from

7

raising the claim and which cannot be fairly attributable to his own conduct." *McCoy*, 953 F.2d at 1258.

"A pro se petitioner is not exempted from the cause and prejudice requirement . . . [and] [h]e must still show either that an objective factor external to himself caused him to default his claim, or that the defaulted claim raises an issue that was intrinsically beyond [a] pro se petitioner's ability to present.  A petitioner's failure to act or think like a lawyer cannot be cause for failing to assert a claim since he has no constitutional right to counsel during habeas corpus proceedings. . . [A]bsent a constitutional guarantee to counsel, a state prisoner – whether counseled or not counseled – must accept responsibility for his procedural default. " *Id.* (internal citations omitted).

The Petitioner has not established cause and actual prejudice to excuse the procedural default of this claim, nor has he established a fundamental miscarriage of justice if his claims are not heard.  "In an extraordinary case, where a petitioner cannot show cause and prejudice, a federal court may still consider a procedurally defaulted claim if it determines that a fundamental miscarriage of justice has probably occurred.  A fundamental miscarriage of justice can be said to have occurred when a court finds that a constitutional violation has resulted in the conviction of someone who is actually innocent . . . [and] the exception is only available upon a showing of 'actual innocence'." *Alderman v. Zant*, 22 F.3d 1541,1552 (11th Cir. 1994).  As the Petitioner has made no showing of actual innocence, he is not entitled to a finding of a fundamental miscarriage of justice.

### Due Process: trial court charge on certainty

The Respondent maintains that Ground 3 in this federal habeas petition, wherein the

Petitioner alleges that the trial court erred in giving a level of certainty charge, fails to raise a valid

ground for federal habeas relief, as it does not raise a violation of a recognized federal

constitutional right.  (Doc. 10, ¶ 2(c)).   However, in his supporting brief, the Petitioner makes it

clear that he is raising a claim of denial of due process in regard to the trial court's certainty

charge to the jury.  (Doc. 12, pp. 4-9).  The Petitioner states that "[t]he trial court's giving of the

level of certainty charge in Petitioner's case deprived Petitioner of a fundamentally fair trial in

accord with the Due Process Clause of the 14th Amendment, as said charge unfairly bolstered the

State's identification of Petitioner at trial."  *Id.* at p. 7.

"An error in instructing the jury cannot constitute a basis for habeas relief unless the error

so infected the entire trial that the resulting conviction violates due process."  *Jacobs v.*

*Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992).  "A defendant's right to due process is not

violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading

as to make the trial unfair."  *Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997).

The Georgia Court of Appeals found as follows:

> . . . Bryson contends that the trial court erred in giving the "level of
> certainty" charge in instructing the jury on assessing the reliability
> of eyewitness identification.
>
> Notably, however, the giving of such an instruction does not
> require reversal when there is other significant evidence
> corroborating the eyewitness identification.  Here, there was other
> evidence linking Bryson to the crimes, including his flight in the
> getaway car immediately following the crimes and evidence that the
> second victim's driver's license and clothing items that had been
> linked to the crimes were found in the getaway car that he had been
> driving.  Moreover, the trial court further instructed the jury as to
> the State's burden of proof regarding Bryson's identity as the
> perpetrator beyond a reasonable doubt as well as other relevant
> considerations.  Under these circumstances, the error in giving the

"level of certainty" charge was harmless.

*Bryson*, 316 Ga. App. at 517 (internal citations omitted).

Courts "review questions of state law in federal habeas proceedings only to determine whether the alleged errors were so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991). Further, a state trial court error must have been "material in the sense of a crucial, critical, highly significant factor" in order to warrant grant of a habeas petition. *Id*. at 1560.

It does not appear, nor has Petitioner shown, that the state appellate court's decision in this matter was contrary to or an unreasonable application of federal law.   The Georgia Court of Appeals found that there was significant other evidence corroborating the eyewitness identification of the Petitioner, thereby determining that the alleged error in the jury charge was not a material or critical error that rendered the entire trial unfair.  The Georgia Court of Appeals' decision that any error by the trial court in giving a level of certainty charge was harmless is not contrary to or an unreasonable application of clearly established federal law, nor is it unreasonable under the facts of this case.  Therefore, Petitioner's contention that the trial court erred giving the jury a level of certainty charge and thereby denied Petitioner due process will not support the granting of federal habeas relief.

*Ineffective assistance of counsel*

In Grounds 4 through 7, the Petitioner raises ineffective assistance of trial counsel claims, asserting that counsel failed to object to improper opinion testimony, failed to object to a burden-shifting question to a witness, failed to object to an impermissibly suggestive identification procedure by the prosecutor, and failed to request a jury charge on a lesser-included offense.  In

order to establish that his counsel's representation was constitutionally defective, the Petitioner must show (1) that his counsel's representation was deficient, and (2) that the petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985).  The Petitioner "must overcome the presumption, that, under the circumstances, the challenged action 'might be considered sound [] strategy'". *Strickland*, 466 U.S. at 688 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  "Our role in collaterally reviewing state judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989).

The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. The Court's determination of prejudice to the Petitioner must consider the totality of the evidence before the jury and ask if "the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696.

The state appellate court, after citing to *Strickland*, found that trial counsel did not err in failing to request a jury charge on a lesser included charge, did not prejudice the Petitioner in failing to object to the opinion testimony, did not err in failing to object to the prosecutor's identification procedure, and did not prejudice the Petitioner in failing to object to allegedly

11

burden-shifting questioning.  *Bryson*, 316 Ga. App. at 519-522.

It does not appear, nor has Petitioner shown, that the state court=s decision in this matter was contrary to or an unreasonable application of federal law.  The court cited to and relied on the principles governing ineffectiveness set forth in *Strickland v. Washington*, the clearly established law in this area, and determined that Petitioner=s counsel provided the Petitioner with effective representation.  Relying on the principles of *Strickland* and its incorporation into Georgia law, the court found that counsel was not deficient and did not prejudice Petitioner.  The facts as found by the state court evidence counsel=s effective representation.  The state court=s decision is not contrary to or an unreasonable application of clearly established federal law, nor is it unreasonable under the facts of this case.  Therefore, Petitioner's contentions that counsel was ineffective in that he failed to object to improper opinion testimony, failed to object to a burden-shifting question to a witness, failed to object to an impermissibly suggestive identification procedure by the prosecutor, and failed to request a jury charge on a lesser-included offense will not support the granting of federal habeas relief.

*Conclusion*

Inasmuch as none of the grounds raised by the Petitioner will support the granting of federal habeas relief, **IT IS RECOMMENDED** that this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. ▐ 2254 be **DENIED**.  Pursuant to 28 U.S.C. ▐ 636(b)(1), the parties may file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right.  28

U.S.C. ▪ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order.  If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

  **SO RECOMMENDED**, this 30th day of August, 2013.

         s/  ***THOMAS Q. LANGSTAFF***

         UNITED STATES MAGISTRATE JUDGE